OPINION
{¶ 1} Appellants Nancy M. Darling and Cathleen E. Darling appeal the judgment of the Jefferson County Court of Common Please imposing a three-year civil stalking protection order (CSPO) against each of them. Appellee Nikki Jo Darling filed for the CSPOs against her mother-in-law (Nancy) and sister-in-law (Cathleen) after confrontations had allegedly occurred at church, home, school, and other places. Appellee also says she received threatening letters signed by "your loving family," and someone slashed the tires on Appellee's car and set her back porch on fire. The trial court issued a temporary protection order, and held a full hearing on January 30, 2006. Numerous family members gave conflicting testimony about the strife between Appellants and Appellee. The trial judge granted the permanent protection order for three years. Because the record does not contain sufficient evidence to support the conclusion that either of the Appellants engaged in menacing by stalking, no permanent CSPO should have been issued. Appellee has not filed a brief on appeal, and in light of the evidence presented at the CSPO hearing, the judgment of the trial court is reversed and the CSPO petitions are dismissed.
 HISTORY OF THE CASE {¶ 2} On January 20, 2006, Appellee filed two petitions for civil anti-stalking protection orders in the Jefferson County Court of Common Pleas. The first petition was against Appellant Cathleen E. Darling, and requested protection only for Appellee Nikki Jo Darling. This is being appealed under Appeal No. 06 JE 6. The second petition was against Appellant Nancy M. Darling, and requested protection for *Page 2 
Appellee, her husband Cortland Darling, and two children, Faith Darling and Dustin Terpenning (a son of Nikki Darling from a previous marriage). This is being appealed under Appeal No. 06 JE 7.
 {¶ 3} The trial court issued a temporary order the day the petitions were filed. Appellants were ordered to stay 500 feet away from Appellee and other family members listed in the petitions; not enter Appellee's home, school, place of employment; nor initiate or have any contact with the petitioners. The order also stated that Appellants could not possess any firearms, and ordered them to return certain garage door openers.
 {¶ 4} A full hearing was held on January 30, 2006. Appellee appeared pro se. She called four witnesses: her husband, a babysitter, her sister-in-law Tina Darling, and herself. Appellants called seven witnesses, including Amanda Morrow (a friend of Appellant Cathleen Darling), Wesley Darling (son of Appellant Nancy Darling), Glenn Snyder (a neighbor), and Jeffrey Bonecutter (a friend used as a character witness). Appellants also testified at the hearing.
 {¶ 5} Appellant Cathleen Darling is not married. She and her mother Nancy live together in a rural area of Jefferson County near Bloomingdale, Ohio.
 {¶ 6} Appellant Nancy Darling is the 74-year old mother of Cortland, as well as the mother of Dennis, Wesley, Diane and Appellant Cathleen Darling. Diane is deceased. Wesley is married to Tina Darling, and they have a child, Courtney. Cortland Darling and Appellee had one child together, Faith Violet. Both have children from previous relationships. *Page 3 
 {¶ 7} Cortland Darling testified that his family was not happy when he began dating and eventually married Appellant almost six years earlier. He testified that he and Appellee have been harassed by Appellants for over five years. He gave a number of illustrations of this harassment. One example was that Nancy and other family members made "rude gestures" to him. (Tr., p. 10.) Cathleen "flipped them off" once while they were shopping. Cathleen slapped him once, and "verbally assaulted" him by saying she never liked Appellee and would like to see them separated. (Tr., p. 10.) He testified that his mother Nancy makes rude faces at Appellee in church. (Tr., p. 22.) The entire extended family apparently attends the same church, and Nancy usually sits four rows in front of Cortland and Appellee. Thus, church attendance was affected by the CSPOs.
 {¶ 8} Cortland testified that Appellee received two threatening letters at home. One of the letters is postmarked December 27, 2005. The letters are addressed to Appellee and say such things as "watch your back at all times" and "you can be gone and no one will know the difference." The first letter states "[y]ou just watch yourself, and every step you take" and "[t]his family will stop at nothing, NOTHING, to get Cortland back." The second letter states "[y]ou and the brat will be gone before you know it." Both letters are signed "your loving family." Importantly, Cortland does not know who sent the letters, but he believes they were from his sister Cathleen. He also reported that, on January 22, 2006, the tires of Appellee's car were slashed, and that someone set his back porch on fire. Appellee put the fire out with fire extinguishers that were in the house. He described the fire as *Page 4 
dangerously close to gas and propane tanks, and stated that his daughter was asleep nearby when the fire occurred. Again, Cortland does not know who slashed the tires or started the fire.
 {¶ 9} Cortland stated that he did not know of anyone else in the family other than Cathleen and Nancy who objected to his marriage to Appellee. (Tr., p. 12.)
 {¶ 10} Cortland also testified that he set up a counseling session for himself, Appellee, and his mother Nancy, but that Nancy walked out after ten minutes. Cortland testified that he and Appellee met with counselors eight or nine times to deal with the emotional issues arising from their relationship with Appellants.
 {¶ 11} After Cortland was finished testifying, Appellee called Kristen Davis to the stand. Kristen was a friend of Appellee's who would, at times, look after Appellee's children. She was in Appellee's house when the porch fire started, but she did not see who started it. She did testify that Nancy gave Appellee a nasty look on the day they were supposed to go to counseling.
 {¶ 12} This is essentially all of the evidence offered in support of the request to issue the CSPOs. Although Appellee testified briefly, she did not recite any additional reasons for granting the CSPOs. She offered no evidence as to who sent the letters, slashed her tires or started the fire. Appellee called Tina Darling to testify, but Tina was basically a hostile witness and did not contribute any material evidence in support of granting the CSPOs. Again, Tina Darling is Appellee Nikki Darling's sister-in-law, Wesley's wife. *Page 5 
 {¶ 13} The remaining witnesses, called by Appellants, denied that there was any animosity between Appellants and Appellee, denied calling Appellee derogatory names, denied making rude faces or gestures at Appellee during church or in any other setting, and completely contradicted Cortland's testimony.
 {¶ 14} Nancy Darling testified that Cortland appeared upset with her on some occasions, even in church once when she wanted to take Cortland's children out for ice cream. She admitted walking out on counseling when Appellee accused her of calling her a "bitch". She testified that she never made any threatening phone calls, never sent threatening letters, and always tried to act as a peacemaker in the family. Both Nancy and Cathleen explained that they were both at Nancy's house when the porch fire occurred, and this was confirmed by testimony from Wesley Darling. Other witnesses testified as to Appellants' reputation for truthfulness.
 {¶ 15} Immediately after hearing all of this testimony, the court stated that this was one of the worst "screwed-up messes" he had ever seen, and decided to issue the permanent CSPOs. There was discussion about how the order would apply to church attendance, since the entire family attends the same church. There were also provisions made for school, since Nancy sometimes was required to pick up her grandchildren after school in emergency situations. Appellants also requested to have their firearms returned, since the women were living alone and were unprotected in a rural area of Jefferson County. The court filed its two judgment entries on February 2, 2006. The court made permanent, for a period of three years, the temporary CSPOs, with three modifications, allowing Appellants to attend church, *Page 6 
allowing Nancy to appear at school for emergencies, and allowing Appellants to have their firearms for defensive purposes only. This timely appeal followed. Appellee has not filed a brief on appeal. Due to this failure, this Court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if the appellant's brief and the record reasonably appear to sustain such action, pursuant to App.R. 18(C). ASSIGNMENT OF ERROR {¶ 16} There is one assignment of error in each of the two appeals, and except for the change of Appellant's name in each appeal, the assigned error is identical in each:
 {¶ 17} "THE TRIAL COURT ERRED IN FINDING THAT CATHLEEN E. DARLING HAS ENGAGED IN A PATTERN OF CONDUCT DESIGNED TO CAUSE EMOTIONAL DISTRESS TO NIKKO JO DARLING AND MEMBERS OF HER HOUSEHOLD AND THAT CATHLEEN E. DARLING HAS THREATENED PHYSICAL HARM, AND THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 18} "THE TRIAL COURT ERRED IN FINDING THAT NANCY M. DARLING HAS ENGAGED IN A PATTERN OF CONDUCT DESIGNED TO CAUSE EMOTIONAL DISTRESS TO NIKKO JO DARLING AND MEMBERS OF HER HOUSEHOLD, AND THAT NANCY M. DARLING HAS THREATENED PHYSICAL HARM, AND THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE." *Page 7 
 {¶ 19} In both appeals Appellants claim the decision to grant the protection orders was against the manifest weight of the evidence. In civil cases, a judgment that is supported by competent, credible evidence will not be reversed by a reviewing court as being against the manifest weight of the evidence. CE. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. In reviewing a manifest-weight argument, "[t]he determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal[.]" Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273. Thus, there is a presumption that the findings of fact as determined by the trier of fact are correct. State ex rel.Pizza v. Strope (1990), 54 Ohio St.3d 41, 46, 560 N.E.2d 765.
 {¶ 20} The instant appeals involve challenges to the issuance of two permanent CSPOs. A petitioner is entitled to a CSPO if he or she alleges and proves, by a preponderance of the evidence, that a respondent harassed him or her in such a way as to violate Ohio's "menacing by stalking" statute. See R.C. § 2903.214(C)(1). The menacing by stalking statute prohibits two types of behavior: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. § 2903.211(A)(1). Thus, menacing by stalking involves either behavior that causes the victim to believe that he or she will be physically harmed, or behavior that causes mental distress to the victim.
 {¶ 21} A "pattern of conduct" means two or more actions closely related in time. R.C. § 2903.211(D)(1). "Mental distress" means any mental illness or condition *Page 8 
that involves "some temporary substantial incapacity" or any mental illness or condition that normally requires, "psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. § 2903.211(D)(2).
 {¶ 22} This Court has held that, "explicit threats are not necessary to establish the elements of menacing by stalking as set forth in R.C. 2903.211." State v. Smith (1998), 126 Ohio App.3d 193, 200,709 N.E.2d 1245. Menacing by stalking can be based, in part, on the defendant using obscene or derogatory language or profane gestures. State v. Bilder
(1994), 99 Ohio App.3d 653, 656, 651 N.E.2d 502. It is not at all clear, though, that merely rude gestures or snide remarks to another person constitute menacing by stalking, and by extension, justify issuing a civil stalking protection order.
 {¶ 23} Although there is evidence that Appellee was threatened and put in physical danger by someone, as shown by the two threatening letters delivered to her home and the porch fire, there is absolutely no material evidence connecting these events with Appellants. The letters themselves are typed and are unsigned, and the postmark is from Youngstown, Ohio, rather than from somewhere in Jefferson County. As Appellee states, the letters could have been typed by anyone. There is also no evidence linking any person to the porch fire or the car vandalism. Appellee and her husband appear to have simply assumed that Appellants were responsible for the letters, the fire and the vandalism because of perceived longstanding *Page 9 
antagonism between the parties. Other than the letters, the porch fire, and the vandalism, there is no significant evidence supporting the issuance of a CSPO. The remaining evidence points, at most, to a few instances of name-calling, snide remarks, dirty looks, and perhaps some rude gestures, but nothing involving threats of physical harm, and nothing that would push Appellee to seek professional mental health treatment. Without some evidence to suggest that Appellants caused Appellee to experience a reasonable threat of harm or mental distress as described in the law, there is no justification to find menacing by stalking and no basis for the CSPOs. Obviously, if there was evidence showing that Appellants did send the letters, set the porch on fire and vandalize the car, a CSPO would be justified, but the record simply does not reveal the connection between Appellants and those events beyond Appellee's mere assumptions, not even under the preponderance of the evidence standard applicable to civil cases.
 {¶ 24} The only possible link between Appellants and the threatening letters is Cortland Darling's statement that he thought the only people in his family who really had a problem with his marriage to Appellee were Appellants, Nancy and Cathleen. (Tr., p. 12.) The threatening letters were signed by "your loving family," and if only two family members had a problem with Cortland and Appellee's marriage, then one might infer that "your loving family" signifies one of those two family members. If these two family members were upset enough to send such threatening letters, one might be inclined to further infer that one or both of those two family members were responsible for acting upon those letters by setting the porch on fire and slashing *Page 10 
Appellee's car tires. These inferences, though, require the stacking of inference upon inference and are so tenuous that they appear to be mere conjecture rather than permissible inferences based on facts in the record.
 {¶ 25} Obviously, a potentially dangerous situation exists for Appellee and her family, but the record before us simply does not connect that danger in any real way to anything Appellants have done. Because this record does not sufficiently support the conclusion that Appellants engaged in menacing by stalking, there was no basis for issuing the CSPOs, and the judgment of trial court is reversed. The two CSPOs issued pursuant to Appellee's petitions are hereby dissolved.
Vukovich, J., concurs.
 DeGenaro, P.J., dissents; see dissenting opinion. *Page 11