DECISION AND JUDGMENT *Page 2 
{¶ 1} In this consolidated appeal we are asked to determine whether the Lucas County Court of Common Pleas erred in issuing a stalking civil protection order ("SCPO") to appellee, Donna S. Szymanski, and a separate SCPO to appellee, Kathleen Lee. Appellant appealed from each of the trial court's orders, and we consolidated the two appeals. Appellant raises the following assignment of error with regard to the SCPO granted to Szymanski:
 {¶ 2} "There was insufficient evidence by which the trial court could have found that appellant harassed appellee Donna Szymanski in such a way as to violate R.C. 2903.211, Ohio's `menacing by stalking' statute."
 {¶ 3} As to Kathleen Lee, appellant asserts the ensuing assignment of error:
 {¶ 4} "There was insufficient evidence by which the trial court could have found that appellant harassed appellee Kathleen Lee in such a way as to violate R.C. 2903.211, Ohio's `menacing by stalking statute.'"
 {¶ 5} The same law is applicable to both of appellant's assignments of error. R.C. 2903.214 grants a trial court the authority to issue a SCPO if, after holding a hearing, it determines, by a preponderance of the evidence, that a defendant violated R.C. 2903.211. Bloom v.Macbeth, 5th Dist. No. 2007-COA-050, 2008-Ohio-4564, ¶ 5. R.C. 2903.211(A)(1) provides: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." To obtain a SCPO, the *Page 3 
petitioner is not required to prove either purpose or intent to cause physical harm or mental distress. Jenkins v. Jenkins, 10th Dist. No. 06AP-652, 2007-Ohio-422, ¶ 16. It is enough that the person acted knowingly. Id. A person acts knowingly when, regardless of his purpose, "he is aware that his conduct will probably cause a certain result" or is probably of a certain nature. R.C. 2901.22(B). That "person has knowledge of the circumstances when he is aware that such circumstances probably exist." Jenkins, supra, at ¶ 16.
 {¶ 6} A pattern of conduct is defined as two or more actions or incidents closely related in time. Id., at ¶ 18, citing R.C. 2903.211(D)(1). However, the incidents "need not occur within any specific temporal period." Id., at ¶ 18, citing R.C. 2903.211(D)(2). "Mental distress" is defined as any mental illness or condition that involves some temporary substantial incapacity, or any mental illness or condition that normally requires psychological treatment, psychiatric treatment, or other mental health services, "whether or not the person requested or received the psychiatric, psychological, mental health services." See R.C. 2003.211(D)(2). Nonetheless, "the statute does not require that the victim actually experience mental distress, but only that the victim believes the stalker would cause mental distress or physical harm." Bloom v. Macbeth, supra, ¶ 11, citing State v.Horsley, 10th Dist. No. 05AP-350, 2006-Ohio-1208. Furthermore, the testimony of the victim herself as to her fear is sufficient to establish mental distress. State v. Horseley, supra, ¶ 48. *Page 4 
 {¶ 7} A trial court's decision granting a SCPO is a matter within its sound discretion; therefore, an appellate court will not reverse that decision absent an abuse of discretion. Olenik v. Huff, Ashland.
5th Dist. No. 02-COA-058, 2003-Ohio-4621, at ¶ 21. To find an abuse of discretion, we must determine that the trial court's attitude in reaching that decision was unreasonable, arbitrary, or unconscionable, and was not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 8} In both of his assignments of error, appellant argues that insufficient evidence was offered to establish that his conduct constituted menacing by stalking. While couching this assignment of error in terms of sufficiency[1], appellant argues that the trial court's judgment is not supported by some competent, credible evidence going to all the elements of this case. This is the standard employed in determining whether a judgment in a civil case is against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.3d 279, syllabus. We shall, therefore, apply this standard, as cited by appellant, in determining his assignments of error.
 {¶ 9} In his first assignment of error, appellant contends that there was insufficient competent, credible evidence to establish that he "knowingly" caused Szymanski physical harm or mental distress or that he engaged in a "pattern of conduct." *Page 5 
As noted above, a pattern of conduct is comprised of two or more incidents that are closely related in time.
 {¶ 10} Appellant and Szymanski are neighbors. At the hearing on Szymanski's request for a SCPO, she testified that she woke up at 5:00 a.m. on January 13, 2008, to the sound of appellant's voice coming through her television, which was turned off. According to Szymanski, this was not the first time that appellant, while using his CB radio, spoke through her television and/or computer. On this particular morning, however, Szymanski said that appellant indicated that she was "interfering" with him. She knew that he was talking about her because appellant mentioned that she "works at Toledo police records second shift."
 {¶ 11} Szymanski maintained that appellant made threats against her, stating: "I'll start with her job, if that doesn't work I have a gun, I'll keep it by me, all I need is a clip. I'll put it in and take her on." Szymanski testified that this statement made her "freak out about the whole thing." Appellant acknowledged the fact that he has guns, but denied the allegation that he has a gun that uses a clip. He also confirmed the fact that he contacted "internal affairs [at the Toledo Police Department] because of everything that was going on."
 {¶ 12} Szymanski further stated that appellant, who claimed that she was "interfering with his airways" (presumably through the use of an oscillator), sent a police crew to her home on February 15, 2008. Szymanski did not have an oscillator. She also asserted that appellant has cameras on his fence through which he constantly watches her, *Page 6 
her two teenage girls, and "a two year old." She complained that "[w]e're afraid to go outside because he watches us and listens to us * * *." Appellant admitted that he has three "fixed" cameras on his property that can move from side to side, as well as up and down. He further divulged the fact that he has the capability to monitor these cameras. Finally, Szymanski maintained that appellant has a "spotlight," i.e., a motion light, situated near the gate to her yard that frightens her when it comes on as she arrives home from work at 11:15 p.m. Appellant testified that both the cameras and motion lights on his property were there for security purposes.
 {¶ 13} Based upon the foregoing, we conclude that Szymanski demonstrated, by a preponderance of competent, credible evidence, that appellant engaged in a pattern of conduct, that is, two or more incidents, in which he was aware that his conduct would cause Szymanski mental distress. In particular, and if believed by the trier of fact, on February 13, 2007, appellee heard appellant threaten to get her, that a few days later he sent the police to her residence, and that on any number of occasions he monitored her activity and that of anyone else on her property by means of his cameras. Additionally, Szymanski's testimony established that appellant's conduct made her afraid, frightened, and scared. Consequently, the trial court did not abuse its discretion in granting her request for a SCPO, and appellant's first assignment of error is found not well-taken.
 {¶ 14} In his second assignment of error, appellant argues that the trial court abused its discretion in granting Lee's petition for a SCPO because Lee failed to offer any evidence that appellant threatened physical harm and/or caused her any mental distress. *Page 7 
He also maintains that Lee did not establish a pattern of conduct, as defined in R.C. 2903.211(D)(1). We must agree with appellant.
 {¶ 15} At the hearing on Lee's petition, she testified that on December 20, 2007, appellant "made statements publicly on the [CB] radio" that he did not care who he would have to "go through" to get Lee's boyfriend, Douglas Adair. Adair lives with Lee and also has a CB radio. Appellant's residence is approximately one and one-half miles away from Lee's home.
 {¶ 16} Lee claimed that three days later the driver's side window on her van was smashed. She further alleged that on February 21, 2008, appellant, using the name of "Mr. Evil," posted the following message on his CB radio: "Hey, did you go down and fix your van window yet, it's cold this time of year, the duct tape and plastic bag, lol, now you fit within the rest of the hood fellows." When asked by the court whether appellant identified himself as Mr. Evil, Lee replied that he did not, but that it was a unique name and that "the postings are very unique." The court declined to listen to the tape of this statement and it was not entered into evidence.
 {¶ 17} Lee also asserted that there were several late night/early morning telephone calls during this period, but could not say who made the calls because they were "blocked." She also alleged that appellant took a photograph of Mr. Adair while they were in court on another matter and posted it on the internet with the caption "Guy in Court," and that, on the next day, she found that her satellite dish was "broken off [her] garage." Nonetheless, Lee could not specifically identify appellant as the person who *Page 8 
took the photograph and posted it on the internet or as the individual who may or may not have caused the damage to her satellite dish. Finally, Lee testified that appellant contacted her employer and informed them of the fact that in 1999, she voluntarily surrendered her "accountant's license" because she was convicted of aiding and abetting in the filing of false income tax returns. Nevertheless, she also testified that her employer already knew about her conviction and loss of her license.
 {¶ 18} In his testimony, appellant denied all of Lee's allegations but the call to her employer in order to provide the information concerning the voluntary surrender of her public accountant's license. The trial judge then granted Lee's motion for a SCPO.
 {¶ 19} Here, Lee related several instances of conduct that could support the issuance of a SCPO. Nonetheless, she could not identify appellant as the individual who engaged in that conduct except in two instances. First, Lee identified appellant as the person who stated on the CB radio that he did not care who he would have to "go through" to get Douglas Adair. Because Lee is Adair's girlfriend, she could reasonably feel the threat of physical violence or suffer mental distress. However, with regard to the information supplied to Lee's employer, Lee, herself, testified that her employer was aware of that information. Thus, while appellant's provision of this information might have annoyed her, we cannot say that it would make her fear any physical threat. In addition, Lee never testified that supplying this information to her employer caused her any mental distress within the meaning of R.C. 2903.11(D)(2). Accordingly, the evidence offered below establishes only one incident — not a pattern of conduct. For this *Page 9 
reason, we find the trial court's judgment as it relates to Lee is not supported by some competent, credible evidence going to all the elements of this case. Appellant's second assignment of error is found well-taken.
 {¶ 20} The judgment of the Lucas County Court of Common Pleas is affirmed as to its judgment in favor of Donna Szymanski and reversed as to its judgment in favor of Kathleen Lee. Pursuant to App. R. 24, appellant is ordered to pay the costs of the appeal in Szymanski v.Trendel, 6th Dist. No. L-08-1110; and Kathleen Lee is ordered to pay the costs of the appeal in Lee v. Trendel, 6th Dist. No. L-08-1111. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, J., William J. Skow, P.J., CONCUR.
[1] Appellant actually maintains that the standard for determining the sufficiency of the evidence and manifest weight of the evidence is the same in a civil case. We disagree. See Bryan-Wollman v. Domonko,115 Ohio St.3d 291, 2007-Ohio-4918, ¶ 3. *Page 1