[Cite as *Krzystan v. Bauer*, 2017-Ohio-858.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Amanda Krzystan
         Appellee

v.

Erik Bauer
        Appellant

Court of Appeals No. OT-15-039

Trial Court No. 2015-CV-205H

**DECISION AND JUDGMENT**

Decided: March 10, 2017

* * * * *

Christopher Marcinko, for appellee.

Kenneth R. Resar, for appellant.

* * * * *

**OSOWIK, J.**

**Introduction**

{¶ 1} This is an appeal from a civil stalking protection order ("CSPO") issued by

the Ottawa County Court of Common Pleas against respondent-appellant, Erik Bauer, for

the protection of petitioner-appellee, Amanda Krzystan.  Appellant challenges the order as against the manifest weight of the evidence.

{¶ 2} For the reasons that follow, we agree with appellant.  Accordingly, we reverse the judgment of the trial court and vacate the CSPO.

## Facts and Procedural History

{¶ 3} The underlying issue between the parties involves appellee's occupancy of commercial property owned by appellant.  Appellee is a lawyer and operated her law practice in the bottom unit of a building purchased by appellant and his wife in April of 2015.  Prior to the change in ownership, appellee rented the unit without a lease, on a "month to month" basis.

{¶ 4} Appellant presented appellee with a proposed written lease, but the parties could not reach an agreement.  On May 20, 2015, appellant's lawyer sent appellee a letter indicating appellant's intention to terminate appellee's tenancy.  The letter also states, "[p]rovided you pay the June 2015 rent [by June 1, 2015] your right to occupy the premises shall terminate on June 30, 2015."   Appellee claims that she sent a check for $700 to appellant; he denies receiving it.

{¶ 5} In support of her petition for a CSPO, appellee alleges two incidents with appellant.

{¶ 6} The first occurred sometime in mid-June, 2015.  Appellant had posted a "three day eviction notice" on the premises and was doing some work in the yard.

2.

Appellee approached him to ask "what the three day notice was about." According to appellee, the appellant responded, "[w]e just want you gone." When appellee offered to pay $700 in cash, appellant allegedly said, "We just want you fucking gone." He then called her a "bitch," as he walked by her.

{¶ 7} Appellant decided, at that moment, to vacate the office because she was "legitimately afraid of this man." She called the owner of the adjacent building, Mike Callahan, and he agreed to sell it to her. Appellee claims that she was planning to be "out [of appellant's building] by the [end of] of June, so there were no issues."

{¶ 8} The second incident occurred on July 1, 2015. By then, appellee had vacated appellant's unit, with the exception of a copy machine and a few other things. When she arrived to finish the move with two friends, the door to her unit was open and appellant, his wife and a plumber were inside. Appellee alleges that appellant came outside and said, "[y]ou are going to get what you deserve."

{¶ 9} Appellee also cited an incident on July 2, 2015, that she did not witness, between appellant and her parents. On that day, appellant's wife called a tow truck to have her parents' car removed from a space marked "no parking." At some point, appellant arrived and told the neighbor, Callahan, that appellant was "going to make [appellee's] life hell." Callahan testified that, at the time he was talking to appellant, a plumber arrived, and appellant added, "Oh, I have to see this guy because I am going to have her water turned off." Callahan reported the comment to appellee.

3.

{¶ 10} Appellee filed for the CSPO on July 2, 2015.  The trial court issued an ex parte CSPO and set the matter for hearing.  A full hearing was held on August 31, 2015, during which both parties and eight witnesses testified.

{¶ 11} On September 2, 2015, the trial court found that a preponderance of the evidence supported continuance of the CSPO until December 31, 2016.  Appellant appealed, asserting two assignments of error.

## Assignments of Error

1.  The trial court committed error when it found that the respondent/appellant Erik Bauer had knowingly engaged in a pattern of conduct that caused petitioner to believe that the respondent will cause her physical harm or has caused mental distress.

2.  The trial court's finding that respondent/appellant Erik Bauer had knowingly engaged in a pattern of conduct that caused petitioner to believe that the respondent will cause physical harm or cause or has caused mental distress was against the manifest weight of the evidence.

## Standard of Review

{¶ 12} When reviewing the issuance of a CSPO on appeal, we apply the civil manifest weight of the evidence standard.  *Fondessy v. Simon*, 6th Dist. Ottawa No. OT-11-041, 2013-Ohio-3465, ¶ 14, citing *Gruber v. Hart,* 6th Dist. Ottawa No. OT-06-011, 2007-Ohio-873, ¶ 17.  Under this standard, "judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a

4.

reviewing court." *C.E. Morris v. Foley Const. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 13} In his brief, appellant states that we apply an abuse of discretion standard. In support, appellant cites case law from the Third Appellate District. While there is a split of authority on this issue, the Sixth Appellate District applies a manifest weight standard of review. *See, e.g., Bullard v. Alley,* 4th Dist. Pike No. 12CA835, 2014-Ohio-1016, ¶11, fn. 1 (Applying the manifest weight standard of review but noting those districts that use the abuse of discretion standard).

## Law and Analysis

{¶ 14} Appellant's assignments of error are related and will be discussed together. Appellant asserts that appellee failed to prove the need for a CSPO by a preponderance of the evidence and/or that it was against the manifest weight of the evidence.

{¶ 15} The issuance of a CSPO is governed by R.C. 2903.214. A person may seek relief under that provision by filing a petition that contains all of the following:

> (1) An allegation that the respondent is eighteen years of age or older and engaged in a violation of section 2903.211 of the Revised Code against the person to be protected by the protection order * * * including a description of the nature and extent of the violation; R.C. 2903(C)(1).

{¶ 16} For a trial court to grant a CSPO, the petitioner must show, by a preponderance of the evidence, that the complained of conduct violates the "menacing by stalking" statute. *Striff v. Striff,* 6th Dist. Wood No. WD-02-031, 2003-Ohio-794, ¶ 10.

5.

The menacing statute, as set forth in R.C. 2903.211(A)(1), provides that, "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person."

{¶ 17} R.C. 2901.01(A)(3) defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Explicit or direct threats of physical harm are not necessary to establish a violation of R.C. 2903.211(A). Rather, the test is whether the offender, by engaging in a pattern of conduct, knowingly caused another to believe the offender would cause physical harm to him or her. *Kramer ex rel. Kramer v. Kramer*, 3d Dist. Seneca No. 13-02-03, 2002-Ohio-4383, ¶ 15.

{¶ 18} A "pattern of conduct" is defined as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). In determining what constitutes a pattern of conduct, courts must take every action into consideration "even if some of the person's actions may not, in isolation, seem particularly threatening." *Guthrie v. Long,* 10th Franklin No. 04AP-913, 2005-Ohio-1541, ¶ 12 quoting *Miller v. Francisco,* 11th Dist. Lake No. 2002-L-097, 2003-Ohio-1978, ¶ 11.

{¶ 19} Finally, the culpable mental state for the issuance of a CSPO is "knowing." A person acts knowingly when, regardless of his purpose, "he is aware that his conduct

6.

will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 20} With the above in mind, we turn to the facts before us. Appellee's petition is premised upon a concern for her physical safety. She specifically denied claims of mental distress.

{¶ 21} Appellant testified that she considered being called a "bitch" a "direct threat" of physical harm. We find, however, as a matter of law, that the comment, without more, cannot support the petition. "[A] few instances of name-calling, snide remarks, dirty looks, and perhaps some rude gestures, but [without] threats of physical harm" do not justify a menacing by stalking finding or the issuance of a CSPO. *Darling v. Darling*, 7th Dist. Jefferson Nos. 06JE6 and 06JE7, 2007-Ohio-3151, ¶ 23. There are simply no facts to suggest that, in making that remark, appellant knowingly caused appellee to believe that he would cause her physical harm. While calling someone a "bitch" may be rude or boorish, "R.C. 2903.211 and R.C. 2903.214 were not enacted for the purposes of alleviating uncomfortable situations, but to prevent the type of persistent and threatening harassment that leaves victims in constant fear of physical danger, or mental distress." (Quotation omitted). *Holloway v. Parker,* 3d Dist. Marion No. 9-12-50, 2013-Ohio-1940, ¶ 35. We find that appellant's comment does not constitute an "incident" toward establishing a "pattern of conduct" under R.C. 2903.211(D)(1).

{¶ 22} Appellant's comment that "you are going to get what you deserve" alleges, at most, an implied or veiled threat. We note, however, that even under a most generous

7.

reading of the transcript, there are no other facts, such as physical gestures, body language or tone of voice, to suggest that appellant intended for his statement to be taken as a physical threat. Conversely, at the time of that exchange, appellant was attempting to evict appellee.

{¶ 23} The same is true for the alleged "hell to pay" that appellant allegedly made to Callahan. There are no facts to suggest what appellant meant by that, other than his stated intention to shut off the water to appellee's unit. In a similar case, where the respondent left a message that he would be "taking action" against the petitioner, but there was no indication of what was meant by "taking action," the Seventh District found that the remark could not support the trial court's decision to issue the CSPO. *Masucci v. Burnbrier,* 7th Dist. Mahoning No. 14MA78, 2015-Ohio-4102, ¶ 17. We find that appellant's alleged comment does not constitute an incident under R.C. 2903.211(D)(1).

{¶ 24} Appellee's other complaints against appellant include two wholly unsubstantiated claims that appellant turned up the thermostat in her unit to 95 degrees and broke off a key in her door lock. She concedes, however, that she has no proof that appellant was behind either incident. Appellee also testified that appellant "towed my parents," but the evidence at trial demonstrated that it was appellant's wife who called the tow truck and that appellant was not present at the scene until later.

{¶ 25} In her brief, appellee cites 14 instances of intimidation by appellant. During the hearing, however, appellee cited fewer, some of which the court refused to consider because they were based upon hearsay. The following exchange took place:

8.

Q. Other than calling you a bitch one time and saying that you are going to get what you deserve one time, did [appellant] make any other threats directly to you?

A. No. He made those two direct threats to me. He made the physical threats of turning the heat up to 95, parking the trailer in my yard, breaking the key, and towing my parents. And then he made verbal threats to an individual who I have idea who it is, a landscaper, and to Mike Callahan, so in totality, maybe I don't know, nine or ten threats, significant threats.

{¶ 26} The facts of this case are similar to *Ensley v. Glover,* 6th Dist. Lucas L-11-1026, 2012-Ohio-4487. There, the parties had a contentious relationship. After the petitioner placed a lien on the respondent's home, the petitioner was told by a number of people that the respondent was "looking for you." When the parties did see each other, the respondent indicated to petitioner that he was carrying a gun. We found that the former was hearsay and therefore, with only one incident to support the petition, there was insufficient evidence to establish that respondent had engaged in a "pattern of conduct." *Id.* at ¶ 15.

{¶ 27} The same is true here. That is, at most, appellee's petition is supported by one incident, i.e. "You are going to get what you deserve." The statute requires that there be at least two to establish that appellant engaged in a "pattern of conduct" as defined by

9.

R.C. 2903.211.  Accordingly, we find that the trial court's order granting the CSPO was not supported by competent, credible evidence.

### Conclusion

{¶ 28} Without a pattern of menacing, there was no basis for issuing a stalking CPO.  Although the stalking CPO has already expired, appellant is entitled to have it removed from his record.  Appellant's assignments of error are sustained, the judgment of the trial court is reversed, and the CSPO is hereby vacated.  Costs are assessed to appellee pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                                    _____
                                                                                          JUDGE
Thomas J. Osowik, J.

James D. Jensen, P.J.                                       _____
CONCUR.                                                                       JUDGE

                                                                         _____
                                                                                          JUDGE