[Cite as *Baldwin v. Buckles*, 2020-Ohio-2759.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Angela Baldwin

    Appellee

v.

 Kobi G. Buckles

    Appellant

Court of Appeals No. L-19-1013

Trial Court No. CI0201804670

**DECISION AND JUDGMENT**

Decided:  May 1, 2020

* * * * *

Daniel H. Grna, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas which granted appellee's civil protection order.  For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 2} On December 17, 2018, petitioner-appellee Angela Baldwin sought an ex parte civil stalking protection order ("CSPO" or "SCPO") against respondent-appellant

Kobi Buckles pursuant to R.C. 2903.214. Appellee is the minor victim's custodial grandmother. Respondent-appellant is a neighbor. On October 19, 2018, appellee alleged that appellant assaulted the victim in their neighborhood in Toledo, Lucas County, Ohio, while the victim rode his bike. When the victim and appellee went to the hospital, the victim had sustained a fractured first thoracic vertebra (what appellee called "a broken neck"). Appellee further alleged on October 29, 2018, appellant yelled threats on the victim's life out the window of a moving car that swerved towards the victim while he, once again, rode his bike in the neighborhood. On November 18, 2018, Toledo Police filed a complaint against appellant for felonious assault, and appellant was arrested on December 7, 2018. Appellant posted bond on December 12, 2018, and on December 17, 2018, the criminal complaint was bound over to the Lucas County Grand Jury, who eventually indicted appellant on January 15, 2019, for felonious assault, a violation of R.C. 2903.11(A)(1) and (D).

{¶ 3} In response to appellant's release on bond and her fear for the safety of her family, appellee sought the CSPO on behalf of two minors in her household: her victim grandson and her son. On December 17, 2018, the trial court magistrate issued the ex parte temporary CSPO for the protection of the minor victim only, and the same magistrate held the full hearing on December 31, 2018. On December 31, 2018, the magistrate issued another CSPO for the protection of the minor victim to run until November 17, 2019, when the victim turned 18 years old, and the trial court judge

2.

adopted the magistrate's order "after review and the determination that there is no error of law or other defect evident on the face of this order."

{¶ 4} On January 7, 2019, appellant objected to the magistrate's order arguing the trial court lacked jurisdiction because the victim did not qualify as respondent-appellant's "family or household member" pursuant to R.C. 3113.31, and the trial court's findings of fact were against the manifest weight of the evidence. On January 10, 2019, the trial court judge overruled appellant's objections stating that the court had jurisdiction pursuant to R.C. 3113.31(A)(3)(ii) because the evidence in the record showed appellee "is the custodial grandmother of" the minor victim. The trial court further stated substantial, credible evidence was in the record, and the magistrate did not lose "her way in weighing credibility and otherwise concluding as she did." Appellant then filed a motion for reconsideration, which the trial court judge denied on January 16, 2019. The trial court stated the following:

> Respondent is indeed correct in quoting (with supplied emphasis) R.C. 3113.31(A)(3), which defines "family or household member" as, inter alia, "another person related by consanguinity or affinity to the respondent." Applied to the instant case, Respondent * * * is not related in such a way to * * * Petitioner and grandmother of * * * the minor for whom and for whose benefit the CPO was requested. However, R.C. 2903.214(C) states as follows: "A person under this section may seek relief under this section on behalf of any other family or household member * * *." To read these two

applicable sections in pari materia as providing a bar to [Petitioner] seeking a protection order for her grandson would be patently absurd and clearly unintended result. If Respondent were correct, when would a grandmother or other "family or household member" ever "seek relief" under the CPO statute at issue? "A person may seek relief under" R.C. 2903.214 "by filing a petition with the court." The person filing the petition is the petitioner. The respondent is the person against whom the CPO is sought. A petitioner does not seek relief for a respondent. It is presumed that a reasonable result is intended in the enactment of any statute. R.C. 1.47.

{¶ 5} Appellant filed his amended notice of appeal setting forth two assignments of error.

> I. The trial court did not have jurisdiction to grant a civil protection order.
>
> II. The petitioner did not have standing to obtain a civil protection order from the trial court.

## I. Jurisdiction

{¶ 6} Appellant argues in support of his first assignment of error that the trial court lacked jurisdiction to issue the CSPO pursuant to R.C. 2903.214 where there was no evidence in the record that the relationship between appellant and appellee, or appellant and the victim, satisfied R.C. 2903.214(A)(3), which, in turn, looked to R.C. 3113.31(A)(3) for the definition of a "family or household member." Appellant argues that the plain language of the statute requires that a "'family or household member'

4.

MUST be in some way related and/or connected to the RESPONDENT otherwise the statutory definition of what is a family or household member under R.C. 2903.214 cannot be met." (Emphasis sic.) Because neither appellee nor the victim have any such relationship to appellant, appellant concludes the trial court "had no jurisdiction to issue the CPO. The ruling of the Magistrate and the trial court granting the CPO must be reversed."

{¶ 7} "'Jurisdiction' means 'the courts' statutory or constitutional power to adjudicate the case.' The term encompasses jurisdiction over the subject matter and over the person. * * * 'If a court acts without jurisdiction, then any proclamation by that court is void.'" (Citations omitted.) *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, 806 N.E.2d 992, ¶ 11. Subject-matter jurisdiction, which goes to the power of the trial court to adjudicate the merits of a case, may be challenged at any time. *Id.*

{¶ 8} We review de novo as a question of law whether a trial court had subject-matter jurisdiction. *Cirino v. Ohio Bur. of Workers' Comp.*, 153 Ohio St.3d 333, 2018-Ohio-2665, 106 N.E.3d 41, ¶ 17. "This court has long held that the court of common pleas is a court of general jurisdiction, with subject-matter jurisdiction that extends to 'all matters at law and in equity that are not denied to it.'" (Citation omitted.) *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 20; Ohio Constitution, Article IV, Section 4(B).

{¶ 9} We find that pursuant to R.C. 2903.214(A)(1), "'court' means the court of common pleas of the county in which the person to be protected by the protection order

5.

resides." According to the record, the victim resides in Lucas County, and the CSPO petition was filed in the Lucas County Court of Common Pleas. "[T]he [common pleas] court has jurisdiction over all proceedings under this section." R.C. 2903.214(B). This court has previously determined the Lucas County Court of Common Pleas has R.C. 2903.214 subject-matter jurisdiction over a Lucas County resident to be protected. *See Irwin v. Murray*, 6th Dist. Lucas No. L-05-1113, 2006-Ohio-1633, ¶ 13; *see also Zielinski-Barnwell v. Prewitt*, 6th Dist. Wood No. WD-13-070, 2014-Ohio-3761, ¶ 14 (finding common pleas court had no subject-matter jurisdiction where the person to be protected was not a resident of the county). Consequently, we find the Lucas County Court of Common Pleas had jurisdiction over the CSPO at issue in this appeal.

{¶ 10} We reviewed the matter de novo and find the trial court had subject-matter jurisdiction in this matter.

{¶ 11} Appellant's first assignment of error is not well-taken.

## II. Standing

{¶ 12} In support of his second assignment of error, appellant argues appellee lacked standing to seek a CSPO petition pursuant to R.C. 2903.214(C) because the person to be protected was not a "family or household member" pursuant to R.C. 2903.214(A)(3) and 3113.31(A)(3). Appellant argues R.C. 2903.214(A)(3) and 3113.31(A)(3) are clear and unambiguous, concluding, "Neither Baldwin nor McCrory fit this definition. They both lacked standing to bring the Petition and the issuance of the CPO should be reversed."

6.

{¶ 13} Standing is a fundamental concept, a "jurisdictional requirement," that a party must have some real interest in the subject matter of the action. (Citations omitted.) *Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, 979 N.E.2d 1214, ¶ 22. The issue of standing may be raised at any time during the pendency of the proceedings. *Id.* Standing is to be determined as of the filing of the complaint. *Id.* at ¶ 27. Standing is a question of law we review de novo. *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 9, *modified on reconsideration,*127 Ohio St.3d 1550, 2011-Ohio-647, 941 N.E.2d 805, ¶ 20.

### A. Absurd-Result Exception

{¶ 14} We determine appellee's standing to file a CSPO by looking to R.C. 2903.214(C), which states, in part, "[A]ny * * * adult household member may seek relief under this section on behalf of any other family or household member, by filing a petition with the court. * * *." A court determines legislative intent when interpreting a statute in its entirety, using the language employed, "'and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation.'" (Citation omitted.) *Horvath v. Ish*, 134 Ohio St.3d 48, 2012-Ohio-5333, 979 N.E.2d 1246, ¶ 10. The record shows that appellee filed the CSPO petition on behalf of the minor victim, who, as her custodial grandchild, initially would seem to be "any other family or household member" by a plain reading of that phrase in R.C. 2903.214(C).

7.

{¶ 15} However, the phrase "family or household member" is defined by R.C. 2903.214(A)(3), stating, "As used in this section: * * * 'Family or household member' has the same meaning as in section 3113.31 of the Revised Code." R.C. 3113.31(A)(3), in turn, defines "family or household member" as follows: "As used in this section: * * * any of the following: (a) Any * * * who is residing with or has resided with the respondent: * * *. [or] (b) The natural parent of any child of whom the respondent is the other natural parent or is the putative other natural parent." The record does not show evidence of such relationships between appellant and the minor victim, and the trial court reached the same conclusion.

{¶ 16} Generally a statute should be interpreted according to its plain meaning. One exception is the absurd-result exception, which holds as its guiding principle "that when the General Assembly enacts a statute, it does not intend to produce an absurd result." *State ex rel. Clay v. Cuyahoga Cty. Med. Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 22. The Ohio Supreme Court guides us that we may reject the strict-construction doctrine of statutory interpretation where doing so would result in an unreasonable or absurd consequence. *Id.* at ¶ 23; *Mishr v. Poland Bd. of Zoning Appeals*, 76 Ohio St.3d 238, 240, 667 N.E.2d 365 (1996). We are mindful that "all courts should exercise restraint in the application of the absurd-result exception, employing it in only those cases in which the plain language of a statute results in an obviously unintended result." *State ex rel. Clay* at ¶ 26.

{¶ 17} The General Assembly also guides us to avoid absurd results when determining the intentions in the enactment of statutes. *Mishr* at 240, citing R.C. 1.47 (C) ("In enacting a statute, it is presumed that * * * a just and reasonable result is intended; * * *.").

{¶ 18} The cross-reference of R.C. 2903.214(A)(3) to 3113.31(A)(3) raises the question of statutory interpretation of whether the General Assembly intended to mandate the only protected person under R.C. 2903.214 must be a person subject to domestic violence under R.C. 3113.31(A)(3). In other words, did the General Assembly intend to protect two different types of endangered persons or to require all civil stalking victims to exclusively be domestic violence victims? We doubt the latter was the General Assembly's intent, particularly where R.C. 2903.214(C)(1) requires a violation of R.C. 2903.211, the menacing by stalking statute. The General Assembly obviously erred by referencing the definition of "family or household member" under R.C. 3113.31(A)(3) rather than the definition under R.C. 2903.211(D)(11). We find that the plain language of R.C. 2903.214(A)(3) requires applying the absurd-result exception to avoid the obviously unintended result of eliminating protections to victims of stalking. *State ex rel. Clay*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, at ¶ 26.

{¶ 19} We reviewed the matter de novo and find appellee had standing under the absurd-result exception to file a petition pursuant to R.C. 2903.214 for her custodial grandson who was a minor.

9.

**B. In Pari Materia Doctrine**

{¶ 20} Even if we did not apply the absurd-result exception, other rules of statutory interpretation apply. "Under our rules of statutory construction, ambiguity means that the statutory provision is 'capable of bearing more than one meaning.'" (Citation omitted.) *Id.* at ¶ 17. The cross-reference by R.C. 2903.214(A)(3) to an incompatible definition in R.C. 3113.31(A)(3) raises such ambiguity.

{¶ 21} "The in pari materia rule of construction may be used in interpreting statutes where some doubt or ambiguity exists. All statutes relating to the same general subject matter must be read in pari materia, and in construing these statutes in pari materia, this court must give them a reasonable construction so as to give proper force and effect to each and all of the statutes." *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 585, 651 N.E.2d 995 (1995).

{¶ 22} When faced with statutory ambiguity, we may invoke the rules of statutory construction to arrive at legislative intent, which is determined primarily from the language of the statute itself, along with other relevant factors, such as construing ambiguous statutes under R.C. 1.49. *State v. Smith*, 136 Ohio St.3d 1, 2013-Ohio-1698, 989 N.E.2d 972, ¶ 17, *overturned by statute on other grounds*. According to R.C. 1.49(A), "If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters: * * * The object sought to be attained." Another consideration is "The consequences of a particular construction." R.C. 1.49(E).

10.

{¶ 23} By the plain language of R.C. 2903.214(C)(1), the General Assembly enacted the statute for the protection of endangered persons from menacing by stalking by a respondent pursuant to R.C. 2903.211. In contrast, by the plain language of R.C. 3113.31(C)(1), the General Assembly enacted the statute for the protection of endangered persons from domestic violence by a respondent. The General Assembly specifically defined "domestic violence" in terms of a type of relationship between the person protected and a respondent. R.C. 3113.31(A)(1).

{¶ 24} Although R.C. 2903.214 and 3113.31 appear to be very similar statutes at first glance, we find the General Assembly clearly intended there to be two separate types of endangered persons to be protected by the plain language of each statute: menacing by stalking and domestic violence. *See Morris v. Kaiser Engineers, Inc.*, 14 Ohio St.3d 45, 48, 471 N.E.2d 471 (1984). "Initially we note that R.C. 3113.31(G) states, 'The remedies and procedures provided in this section are *in addition to, and not in lieu of,* any other available civil or criminal remedies.'" (Emphasis sic.) *Felton v. Felton*, 79 Ohio St.3d 34, 37, 679 N.E.2d 672 (1997). "R.C. 2903.214 and R.C. 3113.31 are separate tools in Ohio's comprehensive protection legislation and offer distinct forms of relief. The goal of R.C. 2903.214 is to allow the police and the courts to act *before* a victim is harmed by a stalker." (Emphasis sic.) *Irwin*, 6th Dist. Lucas No. L-05-1113, 2006-Ohio-1633, at ¶ 15.

{¶ 25} In another distinction between the statutes, we find R.C. 2903.214(C)(1) requires a petitioner to allege a violation of R.C. 2903.211, menacing by stalking, but is

11.

not required for a petitioner under R.C. 3113.31(C)(1). "A finding of domestic violence is not required for a court to issue an SCPO." *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-Ohio-24, 97 N.E.3d 487, ¶ 20 (Kennedy, J., dissenting). "A petitioner may obtain such an [CSPO] if he or she proves by a preponderance of the evidence that the person against whom the order is directed engaged in behavior that constituted menacing by stalking against the petitioner." *Martin v. Popson*, 6th Dist. Ottawa No. OT-12-036, 2013-Ohio-3956, ¶ 6; *Irwin* at ¶ 9; *Krzystan v. Bauer*, 6th Dist. Ottawa No. OT-15-039, 2017-Ohio-858, ¶ 16.

{¶ 26} R.C. 2903.211(D)(11) also defines "family or household member" very similarly to R.C. 3113.31(A)(3): "As used in this section: * * * any of the following: (a) Any * * * who is residing or has resided with the person against whom the act prohibited in [R.C. 2903.211(A)(1)] is committed: * * *. [or] (b) The natural parent of any child of whom the person against whom the act prohibited in [R.C. 2903.211(A)(1)] is committed is the other natural parent or is the putative other natural parent." Once again, the record does not show evidence of such relationships between appellant and the minor victim, and the trial court reached the same conclusion.

{¶ 27} However, we find that the protections under R.C. 2903.211(A)(1) are clearly not limited to domestic relations victims in relation to the respondent: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or *a family or household*

12.

*member of the other person* or cause mental distress to the other person or *a family or household member of the other person.*" (Emphasis added.)

{¶ 28} "Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly." R.C. 1.42. We find that the phrase "family or household member" stated throughout R.C. 2903.214 has not acquired the technical or particular meaning of R.C. 3113.31(A)(3). *See State ex rel. Herman*, 72 Ohio St.3d at 585, 651 N.E.2d 995. This court has repeatedly interpreted a CSPO petitioned under R.C. 2903.214(C)(1) to apply where the person protected bore no current or past residential or parental relationship to the respondent under R.C. 3113.31(A)(3). *Krzystan v. Bauer*, 6th Dist. Ottawa No. OT-15-039, 2017-Ohio-858, ¶ 3 (landlord); *Tighe v. Kaiser*, 6th Dist. Ottawa No. OT-15-032, 2016-Ohio-1400, ¶ 17 (dog walker); *Keller v. Knight*, 6th Dist. Wood No. WD-13-066, 2014-Ohio-2432, ¶ 2 (ex-boyfriend's brother); *Whalen v. Kasicki*, 6th Dist. Ottawa No. OT-13-009, 2014-Ohio-150, ¶ 2 (neighbor); *Bower v. Long*, 6th Dist. Lucas No. L-12-1022, 2013-Ohio-5467, ¶ 4 (son-in-law); *Martin*, 6th Dist. Ottawa No. OT-12-036, 2013-Ohio-3956, at ¶ 2 (horse trainer); *Fondessy v. Simon*, 6th Dist. Ottawa No. OT-11-041, 2013-Ohio-3465, ¶ 3 (neighbor); *Palmer v. Abraham*, 6th Dist. Ottawa No. OT-12-029, 2013-Ohio-3062, ¶ 2 (neighbor); *Ensley v. Glover*, 6th Dist. Lucas No. L-11-1026, 2012-Ohio-4487, ¶ 3 (cousin); *Pringle v. Orth*, 6th Dist. Lucas No.

13.

L-10-1308, 2011-Ohio-2177, ¶ 2 (neighbor; reversed for lack of jurisdiction on other grounds); *Szymanski v. Trendel*, 6th Dist. Lucas No. L-08-1110, 2009-Ohio-992, ¶ 10 (neighbor); *Sobieniak v. Chapdelaine*, 6th Dist. Lucas No. L-08-1173, 2008-Ohio-6403, ¶ 4 (neighbor).

{¶ 29} We reviewed the matter de novo and find appellee had standing under the in pari materia doctrine to file a petition pursuant to R.C. 2903.214 for her custodial grandson who was a minor.

{¶ 30} Appellant's second assignment of error is not well-taken.

### III. Conclusion

{¶ 31} On consideration whereof, this court finds that the trial court had subject-matter jurisdiction and appellee had standing in this matter. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                      _____

Thomas J. Osowik, J.                            JUDGE
CONCUR.
                                       _____
                                                JUDGE

Christine E. Mayle, J.                 _____
CONCURS AND WRITES                              JUDGE
SEPARATELY.

**MAYLE, J.**

**{¶ 32}** I concur in the judgment of the majority, but disagree with its analysis.  I

would affirm the trial court's decision for a single, straightforward reason:  R.C.

2903.214(A)(3) contains an obvious scrivener's error.  That is, it mistakenly refers to

"section *3113.31*" instead of "section *2903.211*" as defining "[f]amily or household

member" for purposes of R.C. 2903.214.  (Emphasis added.)  In my view, it is therefore

unnecessary to resort to any other exception or canon of statutory interpretation.

15.

{¶ 33} A "scrivener's error" is a phrase more commonly associated with legal documents and judicial opinions. But it is also an exception to the general rule requiring the strict construction of statutes. *See, e.g.*, *In re Sorrell*, 359 B.R. 167, 174 (Bankr.S.D.Ohio 2007) (recognizing the "scrivener's error exception" and "the absurdity doctrine" as distinct exceptions to the doctrine of strict construction). The hallmark of the "scrivener's error" exception is that "the meaning genuinely intended but inadequately expressed must be absolutely clear[] otherwise we might be rewriting the statute rather than correcting a technical mistake." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 82, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (Scalia, J., dissenting).

{¶ 34} Although it did not use the exact phrase "scrivener's error," the Supreme Court of Ohio recognized it as an exception to strict statutory construction in *Stanton v. Frankel Bros. Realty Co.*, 117 Ohio St. 345, 350, 158 N.E. 868 (1927), where it stated:

> It is a well-settled rule that courts will not permit a statute to be defeated on account of a mistake or error, where the intention of the Legislature can be collected from the whole statute, or where one word has been erroneously used for another, and where the context affords means of correction. The strict letter of a statute must yield to the obvious intent.

In *Stanton*, the Supreme Court determined that the legislature had erroneously "use[d] * * * the word 'of' when 'or' was the word which was clearly intended." *Id.*[1]

---

[1] Courts outside Ohio also recognize scrivener's error as an exception to the general rule of strict construction. For example, in a somewhat similar case, *Oshtemo Charter Twp. v.*

**{¶ 35}** In my view, the rule announced in *Stanton*—which is undoubtedly the scrivener's error exception although not explicitly characterized as such—governs this case because (1) "the intention of the Legislature can be collected from the whole of the statute," (2) "one [statutory reference] has been erroneously used for another," and (3) "the context affords means of correction." *Id.* at 350.

### 1. The intention of the legislature can be collected from the unambiguous words of R.C. 2903.214 and 2903.211.

**{¶ 36}** The wording of R.C. 2903.214 and 2903.211 is clear and unambiguous. Based on the plain text of these corresponding statutes, it is patently obvious that a "person to be protected by the protection order" under R.C. 2903.214(C) must include a "family or household member" *as defined by R.C. 2903.211(D)(11).* Indeed, this is the *only* conclusion that may be drawn from the plain wording of the statutes.

**{¶ 37}** Relevant here, R.C. 2903.211(A)(1) provides that a person is guilty of "menacing by stalking" if he or she engages in a pattern of conduct that knowingly causes "another person to believe that the offender will cause physical harm to the other person *or a family or household member* of the other person * * *." (Emphasis added.) The statute provides the following express definition of "family or household member":

---

*Kalamazoo Cty. Road Comm.*, 792 N.W.2d 401, 404 (Mich.App.2010), the court applied the "interpretive doctrine of statutory construction known as scrivener's error" and found that "[a] juxtaposition [of various statutes] makes clear that one of the statutory references found in the last sentence of MCL 257.726(3) is the product of a clerical error * * *." *See also Diorio v. Hines Road, LLC*, R.I. No. 2018-207, 2020 WL 1501920, *6 (Mar. 30, 2020) ("It is patently clear * * * that the use of the word 'appropriation' [in a particular statute] is a scrivener's error and should in fact read 'appropriate.'").

17.

(D) As used in this section:

* * *

(11) "Family or household member" means any of the following:

(a) Any of the following who is residing or has resided with the person against whom the act prohibited in division (A)(1) of this section is committed:

(i) A spouse, a person living as a spouse, or a former spouse of the person;

(ii) A parent, a foster parent, or a child of the person, or another person related by consanguinity or affinity to the person;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the person, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the person.

R.C. 2903.211(D)(11).

{¶ 38} Appellee filed for a civil stalking protection order under R.C. 2903.214 because, as alleged, the appellant had committed menacing by stalking under R.C. 2903.211 by engaging in a pattern of conduct that caused her to believe that appellant would physically harm her grandson, whom she lived with. The alleged victim—her grandson—is patently a "family or household member" for purposes of the menacing by stalking offense. R.C. 2903.211(D)(11).

{¶ 39} Appellee filed for the civil protection order under R.C. 2903.214(C)(1), which states that a person may seek a civil protection order against an alleged stalker by filing a petition containing, among other things, "[a]n allegation that the respondent * * * engaged in a violation of section 2903.211 of the Revised Code [i.e., menacing by stalking] against *the person to be protected by the protection order * * *.*"  (Emphasis added.)  The "person to be protected by the protection order" may be (1) the petitioner, if the petitioner files for relief on his or her own behalf, or (2) a "family or household member" of the petitioner, if the petitioner is a "parent or adult household member" of that person.  R.C. 2903.214(C).

{¶ 40} Given that R.C. 2903.214(C) describes the process by which victims of menacing by stalking under R.C. 2903.211 may seek a protective order, and given that victims of menacing by stalking under R.C. 2903.211 expressly include individuals who believe that a "family or household member" *as defined by R.C. 2903.211(D)(11)* will be injured by the offender, it is therefore patently obvious that a "person to be protected" by a civil stalking protection order under R.C. 2903.214(C) must include a "family or household member" *as defined by R.C. 2903.211(D)(11).*  This is the only conclusion that can be reached when the plain and unambiguous words of R.C. 2903.211 and 2903.214 are read together—thereby satisfying the first prong of *Stanton.*

## 2. One statutory reference has been erroneously used for another, and the context affords means of correction.

{¶ 41} Turning to the second prong of *Stanton*, because it is obvious that a "person to be protected" by a civil protection under R.C. 2903.214(C) must include a "family or household member" as defined by R.C. 2903.211(D)(11), it is also obvious that the General Assembly erroneously referred to "section *3113.31*" instead of "section *2903.211*" when drafting the definition of "[f]amily or household member" in R.C. 2903.214(A)(3). That is, "one [statutory reference] has been erroneously used for another." *Stanton*, 117 Ohio St. at 350, 158 N.E. 868.

{¶ 42} To reinforce this conclusion, R.C. 3113.31 concerns *domestic violence* protection orders, which—unlike civil *stalking* protection orders under R.C. 2903.214— protect victims of "domestic violence." Under R.C. 3113.31(A)(1), "[d]omestic violence" is the "occurrence of one or more [prohibited] acts against a family or household member." Because "domestic violence" is restricted to offenses against someone having a familial or residential relationship *with the respondent*, the corresponding definition of "family or household member" under R.C. 3113.31(A)(3) is similarly restricted. In contrast, the underlying offense in this case, menacing by stalking under R.C. 2903.211, is not so limited, nor is its definition of "family or household member" under R.C. 2903.211(D)(11) so restricted.

{¶ 43} Finally, "the context affords means of correction." *Stanton* at 350. The reference to "section 3113.31" in R.C. 2903.214(A)(3) is a scrivener's error that should

be read as "section 2903.211" instead.  That is, the legislature "use[d] * * * [3113.31]

when [2903.211] is the [statute] which was clearly intended." *Id.*

{¶ 44} For these reasons, I agree that the trial court's decision should be affirmed.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.